Columbia, et al. Case number 22-7129, et al. Oyoma Asinor and Brian Dozier, appellants v. District of Columbia, et al. Mr. Perlow for the appellants, Ms. Coburn for the appellees. Good morning, counsel. Judge Henderson is with us. You can't see her, but she will be. Please proceed when you're ready. Thank you, Your Honor, and good morning. Michael Perlow for plaintiffs' appellants and may it please the court, I have reserved two minutes of my time. The Supreme Court has interpreted the Fourth Amendment seizure clause to apply to meaningful interferences with an individual's possessory interests in their property. One way the government can meaningfully interfere with someone's property is by taking possession of it. Prolonging the retention of property it previously took is another. Can I just ask on that? What you say makes a lot of sense as an intuitive matter, but you do have a little bit of a textual problem. The Fourth Amendment governs seizures. The most natural understanding of the word seizure is it's something that happens quickly and then it's done. So how do you get over that problem? Well, we appreciate Your Honor thinks our position makes sense. That's always a good start. As for the textual matter, we think that as a matter of text, our conception of seizure fits quite comfortably with the Fourth Amendment. And that's by looking back at the dictionary definitions of the word seizure from the time of the founding. We've cited several different dictionaries from the founding era, the same ones that the Supreme Court- Johnson says take hold of, take possession, take forcible possession. That's a discreet act. It also says possession, as does the dictionary from Webster. And the modern dictionary, Webster, also says that seizure encompasses the state of being seized. And it says that that definition traces back to the 15th century. So when we're looking at the word seizure, as it was understood at the time of the founding through today, it not only had the definition of taking a possession, which we recognize is relatively short-term act, but also had the definition of possession, which applies to the context that we're talking about. In addition to looking at the dictionary definition, we also look at the way that we talk in our briefs about how, at common law, property that was taken, even if it was lawfully taken, could still give rise to liability if the person who obtained possession failed to return it. Blackstone recognized that there were claims in Chattanooga and Trover, and various scholars have recognized that those claims could arise against federal officials. Indeed, there were cases that we cited where there were officers who actually seized property pursuant to writs of attachment. These are 19th century cases from state Supreme Courts that involved law enforcement officers seizing properties pursuant to writs of attachment, and then being found liable for failing to give it back after the litigation succeeded in favor of the party who owned the property. I'd also refer the court to the historian's brief, which cites additional cases from the 1700s in parts D1 and 2 that endorse the same principle. So in terms of the text, we think when the text is read in a manner consistent with both dictionary definitions and history, it supports our definition. And also, quite frankly, common usage, Your Honor, because we can use seizure in a sentence to mean, for instance, he seized the purse snatcher. We can also use seizure in a sentence like we're using it here. For instance, the seizure of Miss Lynn lasted longer than its reasonable duration allowed. So as a matter of text, history, and common sense, we think our definition fits quite comfortably with the Fourth Amendment blitz. And it also fits well with precedent. That's where I'd like to turn. So, Your Honor, there are several principles that come from the Supreme Court's decision in Jacobson, through its application and interpretation of place, and that then were reaffirmed in Segura, that we believe are quite central to a resolution of this appeal. The first of those principles is that the seizure clause governs the manner of execution of property after possession is secured, even if possession is secured on probable cause. And the government... Manner of execution might connote what happens during the relatively brief time when the seizure is effected. Feels a little bit different from the long-term possession question. Your Honor, we know that manner of execution lasts beyond just the moments where the government is taking possession of the property because Jacobson tells us that. In Jacobson, the court said that a seizure reasonable at its inception can become unreasonable based on its manner of execution. True, but citing place, which is just about the scope of a Terry seizure for But Jacobson applies the reasoning of place to a seizure initiated on probable cause, and it says that the manner of execution can give rise to liability where the only issue with respect to the manner of execution in place was its length. So while we understand that place might not itself resolve this dispute, Jacobson's construction and application of place to circumstances that go well beyond its reasoning suggests that the Supreme Court understood and was attempting to take that rule and recognize that it spoke for something broader. And that approach that the court took in Jacobson, which they then affirmed in its approach in Segura, is also similar to what the courts have done in the criminal suppression case. So I would note there, Your Honor, that those courts in holding that seizures lawfully initiated can become unreasonable because of a tardy warrant application. Those cases rely on Jacobson. For instance, the Third Circuit's decision in Stable, Fourth Circuit's decision in Pratt. They also rely on place. Both of those decisions look to place as well, again, even though the seizures were initiated on probable cause. And those cases also look to Segura, which the government discounts because it's a rule that came out of two different opinions. So what I think that indicates, Your Honor, is that these courts are interpreting place Jacobson and Segura to establish a broader constitutional principle, a constitutional principle that protects rights and possessory interests, and specifically the right that was at issue in all three of these cases, the ability to regain property after it was lawfully taken. And that's exactly how the criminal suppression cases explain their rule. Here's what both the Eleventh Circuit said in Sparks, quote, the purpose of the diligence requirement is to ensure that property thought to contain contraband can be returned promptly to its owners to limit the intrusion on their possessory interest should contraband not be found. That conception of the Fourth Amendment protecting the ability to get property back underlies what these other courts are doing and comports with Jacobson's definition of a seizure as encompassing a meaningful interference with possessory interests and Segal's conclusion that the Fourth Amendment's application turns not on the purpose of the officer, but rather on the intrusion of the possessory interest of the whether or not just this act of executing the seizure should be when it ends. Another point I think is that it's important to keep in mind there is that many of the other cases outside the criminal suppression context have applied the Fourth Amendment even though all meaningful actions in relation to the seizure have terminated. For instance, the district court's decision in Avila involved a claim that a seizure, though lawfully initiated, was unreasonably prolonged. And the court found that claim valid even though the claim involved time that occurred and the court counted time that occurred after a warrant had been secured and the property had been searched. Moms Inc. in the Fourth Circuit involves another case involving a seizure occurring after a warrant had been obtained. And those 19th century common law cases that I mentioned earlier both also found that liability could attach for interferences occurring after the acquisition of after the after lawful process occurred in the form of enrichment. Why no appeal on the Fifth Amendment? Your Honor, we decided not to appeal the Fifth Amendment because we believe our fight isn't with the district court over its rules and its rules for processing property, but rather with MPD and over its procedures for handling the return of property. Not in terms of procedures, but the actual conduct, the way that it refuses to give property back. And I think Your Honor's question reflects an important distinction between the Fourth Amendment and the Fifth Amendment. The Fourth Amendment governs conduct. The Fifth Amendment governs process. The Fourth Amendment is directed towards law enforcement officers. It exists to ensure that law enforcement officers, when interacting with property, recognize the substantive rights that people have in their provide an adequate process so that when the government infringes rights, when law enforcements violate those sorts of rights that are secured by the Fourth Amendment, there's a backstop. Our issue in this case is with the first type of problem, the conduct of the law enforcement officers in failing to recognize the substantive rights protected in the concept of a seizure. Are the remedies different? The remedies may be different, Your Honor, in certain cases. For instance, in this matter, the court said that Rule 41g satisfies due process. All you get as a result of 41g is your phone back. Our clients, though, have additional injuries. They don't just need their phones back. They also deserve to be compensated for the time period that they were not able to use their phone. And you're assuming the 41g process or whatever it might be in federal court would not include that remedy? The 41g process that the district court looked to was the one in Superior Court. And we know how does the federal court? What is what is your understanding? I'm sorry to sidetrack, but I'm trying to get this straight in my head. What is your understanding what the district court meant to say about the federal court's authority to be able to invoke 41g in a civil process in a civil suit like this? Your Honor, I'm not I'm not sure. I think that 41g is a federal rule. 41g is a federal rule, but the district court was looking at the Superior Court's 41g. And the reason for that is that in a due process claim, federal procedural remedies are irrelevant. The question is whether the state has provided adequate procedural remedies. And so the district court looked to the federal case law on Rule 41g solely to understand the scope of the state rule because it thought that the federal case law shed light on that. But the federal practices aren't really dispositive of the Fifth Amendment claim. In any event, what I would know for your honor is that we know of no case holding that under the Superior Court rule you can get damages or a prolonged seizure. And our understanding is that it's at least very highly questionable whether you could do that under the federal rule as well. One last question. We'll sidetrack you further. Is it your sense that you could have pushed on 41g in the federal court proceeding in the civil proceeding and said, look, whether we can get damages or not is another question we want our property back? Your honor, I don't think we could have brought a 41g claim in this case because that's a claim under the criminal rules. And so it would need to be on the criminal docket. Case law is very confusing on that. Okay, go ahead. Yes. Well, I think your honor, the difficulty in figuring out the right vehicle from the 41g process reflects some of the challenges with that process for ordinary plaintiffs who may not have a criminal case against them and trying to figure out how they are supposed to proceed. That I think is the challenges of determining the right vehicle are indicative of that broader problem that many members of the D.C. community face, in large part because of what the district is doing with individuals' phones. I want to make one last point on the substance of our Fourth Amendment claim before turning to the municipal liability issue, and that's that looking back at overall what the government proposes, its vision of the Fourth Amendment doesn't make a lot of sense to the point we began talking about. It would hold that the Fourth Amendment applies if the government unreasonably keeps your cell phone for 90 minutes on reasonable suspicion, but not if it holds a phone seized incident to arrest for three years. It would hold that the Fourth Amendment applies if you have to wait, if the government waits a few days to secure a warrant, but not if it holds your phone for three years to force you to cooperate. It would say that the Fourth Amendment applies if the government intentionally nicks your phone, but not if it intentionally steals it. These outcomes don't make any sense, and precedent and history explain that they are inconsistent with what the Fourth Amendment is trying to do. What do you do with Tate? Tate, your honor? Tate. Yes. Court's decision seems like probably the hardest one for you, in my view. Your honor, Tate exclusively involved a seizure that the government had lawfully obtained title to. The court said that— They lawfully booted the car or towed the car or whatever. Not just lawfully booted the car. The court also said that the court had—the car had gone through the district's forfeiture procedures, and that was why there wasn't a takings claim, because the district had gained lawful title. When we came to the Fourth Amendment part of the analysis, we didn't say the car had been forfeited and now it's government property, so no issue. We said that the government had lawfully possessed the car. So seizure over—I think we cited—don't hold me to this—I think we cited Hodari or Thompson or one of those cases that says seizure is a temporarily limited event. It was— Your honor, I— Oh. It was Hodari. Judge Henderson, you have a question? No, I was just saying it was Hodari. Right. Your honor, the decision in Tate, I think it's important to read it in terms of its facts, and that certainly allows it to be harmonized with Jacobson and Blase, which exclusively make—and Segura, which make clear that a seizure, that conduct occurring after possession is secured can infect the seizure. But I also would just say, and I know my time is up, but I would just say that Tate also poses problems for the government here as well, if I may just make that point briefly. The government says that Jacobson applies to additional intrusions in property that convert the character of the initial seizure. It's hard to see how a sale of a car wouldn't be a Fourth Amendment violation under their theory as well. So we think when Tate's read in light of its facts, it doesn't pose an issue with our precedent or our theory, but if it's read broader, it poses just as much a problem for them as for us. And I'll be doing the rest of my time. Thank you, your honor. Judge Henderson, any questions? No questions. Thank you. Judge Edward? Okay, thanks. We'll give you some more time. Ms. Coburn, good morning.  Marcella Coburn for the District of Columbia at Pelley's. Plaintiffs' cell phones were seized incident to their lawful arrests. No one disputes that the arrests and the seizures were lawful at the time the government took possession of the phones. The question instead is whether the government's continued possession of those phones is also a seizure under the Fourth Amendment. The answer is no, as seven circuit courts agree. Instead, as those courts have held, and as the Supreme Court said in City of West Covina, the Due Process Clause governs procedures about return of personal property. Superior Court Rule 41G provides plaintiffs an adequate remedy to return of their property through the local courts. That is what the District Court held, and plaintiffs do not challenge that ruling here on appeal. Instead, the Supreme Court has repeatedly held that the plain meaning of seizure as applied to personal property is a taking possession. It is a single act and not a continuous fact. That understanding was crucial to the holdings in the circuit courts. It's supported by founding-era dictionaries, cases like Thompson v. Whitman, and this court's decision in Tate, which construed— You know, the problem is, I hear you, and you do have the circuits, for the most part, on your side, but both the District Court and the government in this argument really are doing a bit of sleight of hand in reading what place means. The Supreme Court had a chance to follow up on that in Jacobson, and the District Court focuses extensively on a manner of execution, and that's it, and giving that a very limited view. That's not what the Supreme Court said. The Supreme Court in Jacobson looked at that in footnote 25. It went on to say that, in place, the court held that while the initial seizure of luggage for the purpose of subjecting it to a dog sniff test was reasonable, the seizure became unreasonable because its length unduly intruded upon constitutionally protected interests. So, it is not accurate for you all to so straightforwardly say, this is only about the initial taking, period. Length does matter in the Supreme Court, at least so far as the Supreme Court thinks about it. I think the Supreme Court in Jacobson did say that about place, and it's certainly true that matter in place. As we discussed in our brief, I think place is different. That's a seizure on something less than probable cause, and there the court said, the seizure is on less than probable cause. We're going to impose a limitation on how long that seizure can be. But I think the other important language in Jacobson is at the beginning of section three of the court's opinion, where it describes the field test of the cocaine as a, quote, additional intrusion, and I think it's that additional intrusion, which is the one that court says, in the manner of execution, changes the deprivation from a temporary one to a permanent one, because it's a destruction of property. I think that's what the court is looking at as a seizure in that case. Durational limit matters in the Terry context, where we're talking about minimal intrusion, plus or minus a little bit. Why in the world wouldn't it matter when we're talking about a seizure lasting months? I actually think it makes sense, much more sense in that context, because the difference is between a seizure based on probable cause and a seizure based on something less, and I think the court in Terry and in place was very focused on the idea that because the seizure is not based on probable cause and because there's no warrant, it wants to be very careful about the amount of intrusion the probable cause on the front end, there's no continuing investigatory interest in these cell phones. You can see that. I think that's right, but I think what the Supreme Court's cases say and what Thompson v. Whitman says is that the seizure is, except for in that place context, a taking possession, and once that taking possession is complete, the seizure is complete. So that the dictionary definitions that plaintiffs cite, when you get to the definition of seizure as possession, that's not until the fifth or sixth definition. All of the first ones are the act of seizing, the act of laying hold on, the act of taking possession. Yeah, but that's not what Jacobson's description, and I don't know how you can just brush it off as if the words aren't there. The seizure became unreasonable because its length unduly intruded on constitutionally interest. That has a very clear meaning to me. You know, it may have been okay initially, but you're still holding this many months later for no reason. And the language in Jacobson's describing place seems to say the seizure now is unreal. The seizure, you were holding my property, still seized. Depends on how you look at the word seizure. You seized it and you seized it and if you continue to do it forever with no basis, you may have a fourth amendment problem. I do think that's correct, but I think because Jacobson is talking about place, and because place is talking about reasonable suspicion, I think what Jacobson means to say is what we agree with. That in place, the duration is something that the court has to look at when it's assessing the reasonableness of a seizure. That's not in the footnote. I don't think so. It's not, as a seizure based only on reasonable suspicion is clear. And when you look at Jacobson and what Jacobson itself decided, when Jacobson was looking at a seizure based on probable cause, it talked about the manner of execution of that seizure and it talked about the additional intrusion that was occasioned by the destruction of the property in the field test. And of course here we don't have a destruction of property, so I don't think Jacobson is a good analogy in this case. You concede that there's, the government has a legal obligation to return the cell phones, correct? I think this court in the Wilson case did say that. Okay, so if the fourth amendment doesn't apply, what is the source of that obligation? I mean, the due process clause just gives you process. You get the hearing to adjudicate some legal question. The legal question is, are they entitled to get the property back? What source of law gives them that entitlement? I think what Wilson says is that it's fundamental to the integrity of the criminal justice process that the government ultimately obligate is obligated to do their turn. That's right. But when you're talking about in terms of what the constitution requires, I think it is the process has to be adequate. And of course, you know, there could be common law claims or local claims against the district. I'm sorry to say that the constitution requires some level of adjudicatory process to consider the question, whether they get the cell phones back, doesn't tell me what the source of the obligation is to return the cell phones. I think that's right, your honor. I just, just to be clear, I agree with you that the substantive due process, which seems sort of goofy or maybe the takings clause, but there are all sorts of limits. Nobody briefed it, but there are all sorts of limits on, you know, when a temporary, temporary intrusion is a taking. So if you just say like, you know, no continuing interest, but we're just going to hold the phones for two extra months because we feel like it. I'm not sure that would be a taking. I don't think it would be. Okay. Then what, what compels you to give the phones back? I think that, I think the answer there is once, whatever the process is completed in under superior quote rule 41 G the court has to decide either, you know, on the basis of the facts that are presented, either the government does have to return the phones or there's a reason that it doesn't. So I think the ultimate conclusion of rule 41 G process is court either either says government, your reasons aren't good enough. You've got to return the phones or it says you don't. Okay. And you think there's a money remedy that comes from 41 G? I think under the, under the superior court rule 41 G no. Now if, if for some reason the court did not have an adequate process, of course, procedural due process could have a damaging remedy. There's no full remedy for your loss. And, you know, take the absurd cases like judge Wood, Woods talked about in her separate opinion. This goes on and on and on. And the government has no explanation for why they continue to hold someone's property. None whatsoever. I do think it's true that there's no, there's not a damages remedy under rule 41, but I think the, the case is what my colleague is asking you is so, whereas you all seem to think there is a remedy in there. Where is it? What's your source? We do think, I think rule 41 G provides constitutionally adequate remedy. And if there's no rule 41 G, you can get damages under the procedural due process clause. But since that is satisfied by rule 41 G not available here, I would say, I think under the regime that plaintiffs want, there are a lot of costs to the sixth circuit case in Fox says under that the rule that plaintiffs want every unreasonable refusal to return property that followed a lawful initial seizure would constitute a fourth amendment violation. It would replace the well-developed procedural due process analysis that provides the states with the first chance to prevent possible constitutional wrongs with a new uncertain fourth amendment analysis that allows litigants to jump straight to federal court. Every time a state official refuses to return property that was lawfully seized. And I think in those circumstances that would apply, not just to cases like this, but cases with abandoned property or cases where there's potential questionable or multiple claims, the court would have to assess the reasonableness of the government's effort to determine who owns the property in the first place. It would have to assess the reasonableness of the U.S. attorney's office decision about whether to prosecute individual cases and where there's an adequate state law remedy under rule 41 G don't think the fourth amendment doesn't apply for textual reasons doesn't apply under this court's precedents. And there's no reason to interpose it when there's these other remedies. And just to address some of the delayed search warrant cases that the court that plaintiffs discussed, those cases, I think the reason that those are fourth amendment cases is because again, there is an additional amendment intrusion there. And that's the search. And when the court, I think justice or then judge Gorsuch said this very clearly in the United States versus Christie case, where he said, what we're looking at in these cases is the search and whether the search was reasonable. Now, of course, one of the factors that goes into that is the length of time the government has possessed the seized property. But just because that's a relevant factor to consider in terms of the search doesn't mean that it is a separate freestanding fourth amendment violation, because again, the fourth amendment action in that case that's being assessed is the search similar to, I think in Jacobson, where the fourth amendment action that the court is assessing is the additional intrusion caused by seizure that changed the deprivation of property from temporary to permanent. That's an unreasonable seizure. And in the destruction or in the delayed search warrant cases, you have an unreasonable search here. You don't have that additional action at all. What you have is continuing possession and possession as the Thompson versus Whitman case. That's a case about the ship in New Jersey. That case says possession, which follows seizure, not the same thing. The seizure is a single act, not a continuous thing. True. And Thompson helps you with your argument about the most natural reading of seizure. But that's not fourth amendment law. And I mean, the one thing we know for sure in the fourth amendment context is that the word seizure doesn't prevent ongoing fourth amendment scrutiny when we're talking about seizure of a person, right? That's right. Pretrial detention. So what's the, what's the textual or structural basis for saying the word seizure has this ongoing connotation when a person, when the government has possession of a person, but not when it has possession of personality effects? I think two things to say to that. The first thing is you're right, Thompson, not a fourth amendment case. The court did rely on it for the definition of seizure in both Dari D and Torres. So I think that's relevant. And with respect to the seizure of persons, I think Torres gives us the answer because Torres says that the character of the thing being seized can affect the meaning of seizure. It says that on the front end of the seizure to explain why we don't require possession because you have all these line drawing problems with the fleeing or struggling suspect. Arguably, you know, maybe reading between the lines, it says that because people want a remedy for someone who Why would we distinguish on the back end? Just because we have to distinguish on the front end. Here's how I think it's consistent with the, with the whole definition we're proposing, because in the seizure of persons cases, there is in some cases, a continuing seizure because of the person's Liberty interests because they're free will, because they want to leave custody. So what the government has to continually do is to continually take possession of the person to prevent them from leaving either by exerting force on them or by a show of authority that the person then yields to. So I think you can view it as a moment of many continuing taking possessions of a person. That analysis doesn't make any sense with respect to property, because once I take possession of the property, I don't need to continue exerting force. I mean, sure, the cell phone can't walk off by itself, but the lawyers are making phone calls saying, give us the cell back. If the clients tried to walk in the station and get the cell phones, they'd be physically restrained. They certainly can. I think the physical restraint of the person coming in to get the cell phone may be a seizure of that person, but I don't think there is a continuing application of force. It's just less obvious for the personality. I'm not sure that that's right, your honor, because I think that because with the seizure of persons, it can also be yielding to a authority and the application of force with the intent to restrain. That's another important part of that. And I don't think either of those things apply to what you're doing with a cell phone when you're keeping it in your possession. I don't think even if I set the phone down on the table, I don't think we can say in the moments that follow, I am applying force to it with any intent to restrain it. I am just possessing it. And so I think that's the basis of the decision in the case of the ship. I think that is what the court says. It uses the taking possession definition from Hidari D in the Tate case. And I think that that is the understanding of seizure that the Supreme Court has put forward. The other circuit courts have adopted with respect to the seizures of personal property. No, that line, it's interesting. The line of argument you just advanced isn't completely right. It becomes a little philosophical almost when you think it through. You are exercising control over a person, especially when you use cell phones. The example that person can argue, my existence is in that thing. I mean, there are a lot of people walking around out there. You don't think they have an existence beyond there. And you take it away, they're lost. They can't find anything. They can't do anything. They can't communicate any longer. And you might just as well restrain them bodily. I mean, I think you're overstating it to say they're not comparable situations. We of course understand and think that cell phones are very important to people's daily life and to modern society. But I think that the line that's drawn in the Torres case is about the liberty interest of the thing that is being restrained. And I think in this case, you just can't say, I think it would be an overreading of those cases say that just because cell phones are really important, that they have a comparable liberty interest, free will and desire to leave. And a lot of teenagers who would argue with you I'm sure there are. The liberty interest has been restrained if you take their cell. I'm sure that's right, Your Honor. The other thing I would mention, I think, is talking about 19th century cases and the potential remedy in those cases. Justice O'Connor's concurrence, she points out in the Hudson versus Palmer case, that just because those laws of action existed at the time of the founding doesn't mean they were incorporated into the word seizure. That's also in the Supreme Court case. I'm not sure what year the opinion you're referencing was. I mean, there've been a lot of Fourth Amendment cases in the last 10 years linking Fourth Amendment at a minimum to common law property. I think that is certainly right. That is certainly right. But I think it can't override the consistent, repeatedly applied definition that the Supreme Court has reflected in the founding dictionaries that say that the seizure is a taking session. Yes, that a seizure is a taking session. And so, you know, I think with all that said, and I know my time is running out. And so I would just say, I think under plaintiff's rule, what ends up happening is that instead of these cases being taken care of in local court, Article 41G, you have an influx of cases that can be brought again every two weeks about abandoned property, about property the U.S. Attorney's Office is deciding what to do with. And that's just not required by the Fourth Amendment. Thank you, Your Honor. Mr. Chenderson, any questions? No, thank you. Thank you. Thank you. We'll give you two minutes. Thank you, Your Honor. Just a few points to clear up. First, returning to Tate, I think that, as I said before, it's important to read that case in light of the broader context in which it was written involving not just a taking of possession, but a taking of title. And that makes sense because it allows the court's decision in Tate to comport with what this court has recognized, which is that Hodari doesn't tell the whole story of the Fourth Amendment. The Fourth Amendment continues to address what happens after possession has been secure. Indeed, in Tate, duration wasn't challenged. It was about the sale, which is a distinct issue than what's been presented here. I think I would also note, as you said, Judge Katzin, that the person cases are quite important. And my friends on the other side try to turn these cases into hinging on the need to continually restrain something. But that wasn't what was going on in Barnett, where the person was just put into a cell. It wasn't the problem the person was being restrained over and over. It was the overall interference with their liberty interest. And indeed, going to what Judge Edwards was saying, the Supreme Court has set in place that taking someone's property and not telling them how to get it back indeed can infringe with their liberty, regardless of the context in which it occurs. Additionally, on Jacobson, Jacobson as Judge Edwards was saying, that Hodari doesn't tell the whole story that the Fourth Amendment goes to length. I'd like also to talk briefly about the Fourth Amendment, Fifth Amendment issue that we touched on in the prior conversation. The fact that both amendments may be relevant is not necessarily a crucial fact in this case, because as the Supreme Court has said, the burden on lower courts is to decide whether each amendment applies, not the precise line between them. Finally, a word on practicalities. The government says that our position will result in lots and lots of litigation, but we haven't seen a deluge of lawsuits in the Ninth Circuit, the largest circuit in the country where this rule applies. And the reason we haven't seen that is because when the Ninth Circuit clarified the Fourth Amendment law, the government obeyed it. And we also haven't seen it because this test isn't about whether the Fourth Amendment is violated by the police. Rather, it's just that the Fourth Amendment applies. And as the Supreme Court said in Soledad, the ultimate touchstone is reasonable. Unreasonable conduct, even long conduct, may well be reasonable if it's justified by the government's interest as compared to the possessory interest of the individual. And so because of that, we think courts are perfectly capable of recognizing that and weeding out problematic... I take your point that claimants might not always win, but there will very often be litigable issues about reasonableness. So shouldn't we worry about that as well? First off, Your Honor, the Supreme Court recognized that risk, but that didn't stop it from holding in Soledad that the Fourth Amendment applies well outside the criminal court. Additionally, most of the time when the government takes property, it does so where there's a pending criminal case. And in those scenarios, the sorts of confusions that I was discussing with Judge Edwards about whether 41G applies don't arise. But outside that context, where someone has to hire a lawyer to represent them for a very low damages case, that isn't going to be something that most people will be able to do in 41G, but it might arise where there's a Fourth Amendment remedy that can help people. Thank you, Your Honor. Judge Henderson, any questions? No, thank you. Thanks to both counsel for your very helpful arguments. The case is submitted.
judges: Henderson, Katsas, Edwards